UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RONALD F. MARTINEZ,

      Plaintiff,

vs.

KATHLEEN ALLISON, Warden, *et al.*,

      Defendants.

Case No. 1:11-cv-01749-RRB

**ORDER REGARDING**
**MOTION AT DOCKET 28**

    At **Docket 28** Plaintiff Ronald F. Martinez filed a Motion to Compel Responses to Discovery. Defendant J. Davis has opposed the motion[1] and Martinez has replied.[2] The Court has determined that oral argument would not materially assist in the resolution of the issues presented. Accordingly, the matter is submitted for decision on the moving and opposing papers.[3]

    As the Court noted in denying an earlier motion to compel production of restraints and clothing used on an inmate while on contraband watch filed by Martinez, in screening the Complaint this Court permitted Martinez to proceed on his Eighth Amendment excessive force claim pleaded in his third cause of action against Defendant J. Davis.[4] In that Order the Court

---

[1] Docket 40.

[2] Docket 42.

[3] L.R. 230(l).

[4] Docket 34.

further clarified that the extent of the claim cognizable in this Court was his constitutional Eighth Amendment excessive force. This Court further held that violations of the regulations promulgated by California Department of Corrections and Rehabilitation do not necessarily rise to the level of a constitutional excessive force claim cognizable in this Court.

In general, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."[5] In several instances Davis claims that the information in question is privileged. With respect to claims of privilege, Federal Rule of Evidence 501 provides:

> The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:
> • the United States Constitution;
> • a federal statute; or
> • rules prescribed by the Supreme Court.
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

In this case, an Eighth Amendment excessive force claim, the rule of decision is one of federal law. Accordingly, to the extent they are based upon state law, Defendant's claims of privilege are not well taken.[6]

---

[5]  Fed. R. Civ. P. 26(b)(1).

[6]  *See Breed v. U. S. Dist. Court for the N. Dist. of Cal.*, 542 F.2d 1114, 1115 (9th Cir. 1976 (holding that while they may be a useful referent, state law as to privileges is not controlling in civil rights cases); *see also Wilcox v. Arpaio*, 753 F.3d 872, 876–77 (9th Cir. 2014) (holding that where the dispute involved questions of both state and federal law, federal privilege law governs).

In his motion Martinez seeks to compel the production of documents, further responses to interrogatories, and challenges the responses to several requests for admission. The Court will address each category separately.

<u>Production of Documents</u>

Martinez requested the production of documents broadly described as: (1) job descriptions; (2) CDCR 602s filed against Defendant J. Davis for the period 2005 through 2010; (3) transcriptions of all recorded interviews Davis had with prison officials related to the investigation into Martinez's allegations of excessive force; (4) "post orders" for staff facility on the dates in question; and (5) use of force criteria; and (6) witness statements collected by internal affairs concerning the incident at issue in this case.

Given the limited nature of the claim cognizable in this Court, production of the job descriptions, CDCR 602s, "post orders," and use of force criteria would neither produce admissible evidence nor lead to the discovery of admissible evidence.

The transcriptions of recorded interviews of Defendant and the statements of witnesses, however, stand on an entirely different footing. That is, those statements logically might contain admissible evidence or reasonably lead to the discovery of admissible evidence. Thus, unless they are protected by some privilege, Plaintiff is entitled to their production. The two requests at issue as stated in Plaintiff's motion read:

"Transcriptions of any and all recorded interviews Defendant J. Davis had with SATF hiring authority, Office of Internal Affairs, appeal inquiry, etc., relating to the investigation(s)

into Plaintiffs [*sic*] allegations of excessive force by Defendant J. Davis for 602 log no: SATF-C-10-1987."[7]

"Any and all witness statements that were collected by the office of internal affairs relitive [*sic]* to the incident of April 24, 2010, i.e., Plaintiff's allegations of excessive force."[8]

In his response, Defendant contends that in his initial discovery he produced the "non-confidential reports authored by Defendant and witnesses Alcantar, Beasley, Johnson, and Vasquez."[9] In declining to produce further statements, Defendant claims that the "self-critical analysis" privilege applies, citing *Dowling v. American Hawaii Cruises, Inc.*[10] Unfortunately for Defendant, in a later case the Ninth Circuit noted:  "UP's assertion of a self critical analysis privilege is particularly questionable. [The Ninth Circuit] has not recognized this novel privilege."[11] Nor, for that matter, even if this Court were to apply California law, it does not appear that California recognizes that privilege.[12]

---

[7]  Docket 28, p. 15.

[8]  Docket 28, p. 38.

[9]  Docket 40, p. 15.

[10]  971 F.3d 423, 426 (9th Cir. 1992).

[11]  *Union Pacific R. R. Co. v. Mower*, 219 F.3d 1069, 1076 n.6 (9th Cir. 2000) (citing *Dowling*); *accord, Branch v. Umphenour*, 2014 WL 3891813 at *7 (E.D. Cal. August 7, 2014); *Duenez v. City of Manteca*, 2013 WL 684654 at *11 (E.D. Cal. February 22, 2013).

[12]  *See Cloud v. Superior Court* (*Litton*), 58 Cal. Rptr. 2d 365, 369 (Cal. App. 1996) (naming 13 privileges recognized in the California Evidence Code, the self-critical analysis privilege not among them).

On the other hand, federal common law recognizes a qualified governmental privilege for official information.[13] In determining whether information sought is privileged, the Court must employ a balancing test, weighing the potential benefits of disclosure against the potential disadvantages.[14] If the potential disadvantages are greater, the privilege bars discovery.[15]

Initially this Court notes that Defendant's response, refers to "non-confidential reports." Thus, the Court is unable to determine whether or not Defendant has produced *all* statements made by him, or witnesses, in connection with the internal investigation of the incident at issue. If Defendant has, Plaintiff's motion to compel a further response is moot. On the other hand, if there were statements made that were *not* produced, the Court must address those statements applying the qualified governmental privilege for official information.

Defendant argues that:

> The use of force in a correctional setting is an important issue; the public has an interest in CDCR monitoring its employees' actions. CDCR has the authority to create rules and regulations for prison management, and can impose discipline on its employees. CDCR thus is in best position to promptly review use of force incidents, take steps to conform employee actions to policy, and, if needed, to effect policy changes. These purposes are served by promising and protecting confidentiality during investigations. Confidentiality encourages participation in investigations, honest statements from employees, and candid opinions from supervisors. *See Jaffee*, 518 U.S. at 11–12. If

---

[13] *See Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990) (affirming a denial of access to personnel files); *cf. Kerr v. U. S. Dist. Ct. for the Northern Dist.* 511 F.2d 192, 198 (9th Cir. 1975) (privilege recognized, but found not to be applicable because it had not been properly raised).

[14] *Sanchez*, 936 F.2d at 1033–34.

[15] *Id.* at 1034.

investigations could not be conducted confidentially, there would a significant incentive for employees to not cooperate with investigations and for reviewers to not provide honest analysis and opinions. Further, breaking confidentiality creates an incentive for CDCR to avoid conducting investigations, rather than using them freely as an effective prison administration tool. *Id.* The circumstances here thus favor confidentiality, to encourage candid and frequent self-critical analysis of the use of force within California's prisons.[16]

Initially, the Court notes that in *Jaffee* the Supreme Court recognized that the psychotherapist privilege promoted sufficiently important interests that outweighed the need for probative evidence.[17] In so doing, *Jaffee* applied a two-prong analysis: first, a court must examine the private interest involved; second, the asserted privilege must also serve the public ends. As to the first prong, *Jaffee* recognized that "confidentiality is a *sine qua non* for successful psychiatric treatment."[18] "[A] privilege protecting confidential communications between a pyschotherapist and her patient from involuntary disclosure, the proposed privilege thus serves important private interests."[19] With respect to the "public interest" prong, the Court noted:

> [. . . .]  The psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem.  The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance.[20]

---

[16]  Docket 40, p. 16.

[17]  *Jaffee v. Redmond*, 518 U.S. 1, 9–10 (1996).

[18]  *Id.* at 10.

[19]  *Id.* at 11.

[20]  *Id.*

Applying both prongs, the *Jaffee* Court held:

> In contrast to the significant public and private interests supporting recognition of the privilege, the likely evidentiary benefit that would result from the denial of the privilege is modest. If the privilege were rejected, confidential conversations between psychotherapists and their patients would surely be chilled, particularly when it is obvious that the circumstances that give rise to the need for treatment will probably result in litigation. Without a privilege, much of the desirable evidence to which litigants such as petitioner seek access—for example, admissions against interest by a party—is unlikely to come into being. This unspoken "evidence" will therefore serve no greater truth-seeking function than if it had been spoken and privileged.[21]

This Court finds Defendant's arguments unpersuasive. While the Court does not dispute that obtaining truthful statements is important to internal investigations, how compelling production in connection with a civil lawsuit would have a "chilling effect" is both unexplained and inexplicable. Internal investigations by CDCR have a disciplinary purpose, the evidentiary standard for which is indisputably considerably lower than that involved in a civil rights lawsuit brought in federal courts. That parties (or witnesses) to an internal disciplinary proceeding, which can lead to sanctions such as suspension, demotion, or termination, would be less likely to be truthful or candid if the statements could be used in later litigation is, simply put, illogical. In short, the specter of adverse employment, or other corrective, actions in the context of internal disciplinary matters is much greater than that of civil rights lawsuits brought by prisoners. Likewise unexplained is how allowing discovery of such statements would create an incentive for CDCR to *not* conduct investigations into alleged misconduct. Indeed, the converse is more likely than not true. By conducting such

---

[21] *Id*. at 11–12.

investigations CDCR can take appropriate corrective action, e.g., disciplinary or training, to prevent recurrences.

Applying the *Jaffee* two-prong analysis, this Court finds that the statements at issue before this Court, i.e., statements made as part of an internal investigation into the incident upon which the inmate's lawsuit is based upon the acts of the correctional officer involved, i.e., the Defendant, and those individuals who were percipient witnesses, are not entitled to protection under the qualified governmental privilege for official information.[22]

Responses to Interrogatories

Martinez also seeks further response to certain interrogatories: (1) a listing of all duties and post orders for officers assigned to search and escort duties on April 24, 2010; and (2) the number of inquiries/interviews made of Davis by internal affairs for the six years preceding the incident.

Given the limited nature of Plaintiff's claim cognizable in this Court, the Court agrees with Defendant that the interrogatories to which Plaintiff seeks further response do not fall within the scope of discoverable material. That is, requiring further response to the interrogatories in question would neither produce admissible evidence nor lead to the discovery of admissible evidence.

---

[22] This Court notes that its ruling applies solely to statements made by the correctional officer the subject of the investigation and any percipient witnesses to the event(s). It does *not* extend to any comments, opinions, analyses, or findings by any official conducting, reviewing, or otherwise participating in the investigation, nor should be construed as so extending.

Responses to Requests for Admissions

Martinez requested Davis to admit to five facts.

1.     Request:  Admit, within the prison contents [sic], you Defendant J. Davis are not a "bitch".
       Response:  Objection, this request for admission is argumentative, vague and ambiguous with respect to "bitch," calls for speculation, is confusing to answer because it presents a double negative, and is not relevant to the claims or defenses in this matter or likely to lead to the discovery of admissible evidence. Davis cannot accurately respond to this request for admission without knowing what Martinez means by the term "bitch."  Davis therefore does not respond to this request for admission.

2.     Request:  Admit, while Plaintiff is in the CSW restraints of: two jumpsuits, taped closed biceps, ankles, hi[gh] inner thighs, and chest, waist restraints, handcuffs with tube hand covers and leg restraints, Plaintiff is unable to throw a punch.
       Response:  Objection, this request is compound, assumes improper facts, and is vague and ambiguous with respect to "taped closed" and "unable to throw a punch." Because the request is couched in uncertain terms, Davis cannot accurately respond to this request as written.  Without waiving these objections, Davis responds as follows:
             Davis denies that an inmate secured in restraints for contraband surveillance watch is incapable of physically resisting an officer or physically attacking an officer.
       Supplemental Response:   Without waiving previously asserted objections, Defendant further responds as follows:
             Davis denies that Martinez was secured with a waist chain on April 24, 2010, when the incident that is the subject of Martinez's Complaint occurred. Davis denies that an inmate restrained with handcuffs and hand isolation devises ("hand covers") but no waist chain is unable to swing his arms to strike an officer.

3.     Request:  Admit, while Plaintiff is in the CSW restraints of: two jumpsuits, the openings taped closed, biceps, ankles, including taped hi[gh] inner thighs and chest, waist restraints, hand cuffs with the tube hand covers and leg restraints, Plaintiff is unable to kick.
       Response:  Objection, this request is compound, assumes improper facts, and is vague and ambiguous with respect to "biceps, ankles, including taped hi[gh] inner thighs and chest" and "unable to kick."  Because the request is couched in uncertain terms, Davis cannot accurately respond to this request as written. Without waiving these objections, Davis responds as follows:

Davis denies that an inmate secured in restraints for contraband surveillance watch is incapable of physically resisting an officer or physically attacking an officer.

Supplemental Response:   Without waiving previously asserted objections, Defendant further responds as follows:

Davis denies that Martinez was secured with a waist chain on April 24, 2010, when the incident that is the subject of Martinez's Complaint occurred. Davis denies that an inmate wearing ankle cuffs ("leg restraints") is unable to strike an officer with his feet.

4.      Request:  Admit, as a correctional officer CDCR did not train you Defendant J. Davis to tackle, take down to the ground an inmate in restraints, i.e., handcuffs and use your forearm to land on the inmate's neck.

Response:  Objection, this request is compound, assumes improper facts, is vague and ambiguous with respect to "tackle, take to the ground," "restraints," and "land on the inmate's neck," is confusing to answer because it presents a double negative, and is incomprehensible as written. The request also presents an incomplete hypothetical and calls for speculation. Without waiving these objections, Davis responds as follows:

Defendant admits that correctional officers are trained on use of force and controlling inmate movements, but every possible scenario cannot be anticipated.

Supplemental Response:   Without waiving previously asserted objections, Defendant further responds as follows:

Davis admits that as a correctional officer, he received training regarding the use of force.  However, whether use of force is appropriate in any particular incident depends upon the circumstances of that particular incident.

5.      Request:   Admit, hypothetically: for a correctional officer to body slam a handcuffed inmate onto the floor, hand on the inmate's neck with a forearm with its [sic] body weight behind it, then using the same forearm on the inmate's neck to push oneself off the inmate's back, then immediately put a booted foot between his legs and smash, ground the inmate's scrotum and penis into the ground, would equal force amounting to unnecessary and wanton infliction of pain.

Response:  Objection, this request is compound, assumes improper facts, is vague and ambiguous with respect to "force amounting to unnecessary and wanton infliction of pain." The request also presents an incomplete hypothetical, calls for speculation, and requests a legal conclusion. For these reasons, Davis is unable to respond and on that basis denies this request.

Supplemental Response:   Without waiving previously asserted objections, Defendant further responds as follows:

This hypothetical is incomplete in that it presents no facts concerning the hypothetical inmate's actions or the hypothetical correctional officer's intent, which are necessary for assessing whether a particular action constitutes an excessive use of force. Davis denies that this hypothetical accurately represents the incident that occurred on April 24, 2010, and denies that he used excessive force against Martinez on that date.

As to the first request, it does not appear to have any relevance whatsoever to the issues presented in this action.  With respect to the remaining four, in addition to the fact that the requests are compound and assume facts that have not been established, the Court finds that Defendant has adequately responded to the requests. While Plaintiff did not get the precise responses he desired, the response he received did adequately and properly respond to the requests as propounded. In short, a response is not inadequate simply because it refuses to admit facts that are in dispute.

Accordingly, Plaintiff's Motion to Compel Responses to Discovery at **Docket 28** is **GRANTED** in part and **DENIED** in part.

1.      On or before **November 7, 2014**, Defendant J. Davis must produce transcripts of all statements made by the Defendant and any witnesses to the event underlying this action made in connection with all internal investigations into the event by the California Department of Corrections and Rehabilitation, whether or not deemed confidential; and

2.      Concurrently therewith, on or before **November 7, 2014**, Davis must serve and file with this Court a verified statement by the custodian of records certifying that all such transcripts have been produced.

In all other respects, Plaintiff's Motion to Compel Responses to Discovery at **Docket 28** is **DENIED**.

**IT IS SO ORDERED** this 14th day of October, 2014.

S/ RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE